IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JOSEPH VALESH,**<br><br>*On Behalf of Himself and those similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>**Bajco International, LLC; Bajco, LLC; Bajco Michiana III, LLC; Bajco Global Management, LLC; Bajco Global Management II, LLC; Bajco 100, LLC; Bajco North, LLC; Bajco East, LLC; Bajco Central, LLC; Bajco Florida, LLC; Bajco Illinois, LLC; Bajco Michiana, LLC; Bajco Michiana II, LLC; Bajco Michiana IV, LLC; Bajco New York, LLC; Bajco Ohio, LLC; Bajco Philadelphia, LLC; Bajco Williamsport, LLC; Bajco Wisconsin, LLC; BETCO 36 Bajco Venture LLC; Nadeem Bajwa, and Faisal Bajwa,**<br><br>Defendants. | Case No. 4:20-cv-00028-DRL |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS WITHOUT PREJUDICE

Defendants, under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") and Federal Rule of Civil Procedure 12(b)(3), respectfully move the Court to enter an Order compelling Plaintiff Joseph Valesh ("Valesh") to submit his claims to individual arbitration and dismissing this action without prejudice.

### I.     INTRODUCTION

This matter should be compelled to arbitration because Valesh should be held to the Arbitration Agreement to which he consented as part of the onboarding process for employment

at Bajco Michiana III.  Valesh unequivocally agreed he would bring any employment-related claims, including the wage claims he purports to assert in his *Class and Collective Action Complaint* only in final, binding individual arbitration.  The Arbitration Agreement between Valesh and Defendants is an enforceable contract, under the FAA, and is supported by sufficient consideration.  Because Valesh accepted Defendants' offer to arbitrate employment related claims and the Arbitration Agreement is supported by sufficient consideration, Valesh must be compelled to arbitrate his claims individually.

## II.     RELEVANT FACTUAL BACKGROUND

Defendant Bajco Michiana III hired Valesh on or about October 20, 2017. (Exhibit A – Deposition of Joseph Valesh ("Valesh Dep.") at 6:9-6:12.)  Valesh remained employed until April 2019. (*Id*. at 6:13-6:15.) Valesh completed his employment application electronically. (*Id*. at 6:24-7:4.)  Valesh does not recall the website he visited to complete the application or the documents he filled out online. (*Id*. at 7:13-7:15; 8:12-8:14.)

Since 2014 or 2015, Defendants have used a product called Efficient Hire[1] for their onboarding process. (Exhibit B – Deposition of David Kenney ("Kenney Dep.") at 11:2-11:4; Exhibit C – Deposition of Connie Schaffner ("Schaffner Dep.") 15:9-15:12.)  The onboarding process is initiated through an email from system@efficientforms.com.  The recipient of the email will click on a link in the body of the email. (Exhibit D – Declaration of David Kenney ("Kenney Decl.") ¶ 4.)  The email recipient is informed to "create your Password and PIN, which you will use to access your account and **electronically sign requests**." (*Id*.) (emphasis added.)  The link

---

[1] Efficient Hire is a product developed by Efficient Forms, LLC.  In 2017, Efficient Forms LLC sold to EF Operating, LLC.  Efficient Business Solutions ("EBS") is a separate company that partners with EF Operating, LLC and partnered with Efficient Forms LLC to sell the Efficient Hire solution. (Kenney Dep. at 10:22-13:4.)

only can be accessed by the email recipient unless the email recipient discloses her login information to other individuals. (*Id*.)

According to the Efficient Hire Document Electronic Signature Certificate,[2] Valesh first accessed Efficient Hire on July 24, 2017, at 3:07:03 PM MST. (Kenney Decl. ¶¶ 5-6 & Ex. 1.) He completed his employment application the same day at 4:41:50 pm MST and completed Bajco's onboarding process on October 17, 2017, at 6:48:42 pm MST. (Kenney Decl. ¶¶ 6-7 & Ex. 1.) Valesh electronically signed the Bajco Group Workplace Resolution Program and Mutual Arbitration Agreement ("Arbitration Agreement") on October 18, 2017, at 12:48:42 am GMT. (Schaffner Dep. 32:16-33:16 & Ex. 4.)  Greenwich Mean Time is six hours ahead of Mountain Standard Time, meaning Valesh executed the Arbitration Agreement on October 17, 2017, at 6:48:42 pm MST.

Bajco's onboarding process includes a section titled "Additional Questions." (Schaffner Dep. 22:6-22:11; 24:20-25:7 & Ex. 1.)  This page includes the following language: "**IMPORTANT**:  The following agreement is a condition of your employment.  Please click on the link and review the agreement carefully.  After reading the agreement in its ENTIRETY please answer the question below." (Schaffner Dep. Ex. 1 at 5.)  Directly below that language is a link to view the Arbitration Agreement. (*Id*.).  This language follows the link to view the Arbitration Agreement:

> All questions below require a response.
>
> This arbitration agreement is a condition of your employment.  If you understand and agree to abide by the arbitration agreement terms, please select "I Agree."  If you need more time to review the arbitration agreement terms, please select "I Need More Time."

---

[2] The Efficient Hire Document Electronic Signature Certificate is a document stored in the ordinary course of business by EF Operating, LLC.  (Kenney Decl. ¶ 5.)

(Schaffer Dep. Ex. 1 at 5.)

The drop-down box is not prepopulated. (Schaffner Dep. 26:22-27:14.) The employee must select either "I Agree" or "I Need More Time" before continuing to the next phase of the onboarding process. (Schaffner Dep. 26:18-27:2.) Kenney testified that when Valesh completed the onboarding process, there was not a drop-down menu, but a text box in which prospective employees had to enter text to move forward in the onboarding process. (Kenney Dep. 30:7-30:15.) The text entered by the employee was then populated onto the Arbitration Agreement in the "Employee Name Printed" field under the employee's electronic signature. (Kenney Dep. 42:21-42:24) On the Arbitration Agreement Valesh signed, the words "I Agree" appear in the "Employee Name Printed" field. (Schaffner Dep. Ex. 4 at 4)

Valesh's Arbitration Agreement defined its scope as:

> [A]ll claims or controversies, past, present or future, including without limitation, claims arising out of or related to my application for employment, employment, and/or the termination of my employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) Company's parents, subsidiaries, partners, divisions, and d/b/a's and affiliated entities, (3) Company's officers, directors, employees, or agents in their capacity as such or otherwise, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them. The entities or individuals in sub-sections (1) through (5) of this paragraph may enforce this Agreement as direct or third-party beneficiaries.
>
> This Agreement is intended to be as broad as legally permissible under the Federal Arbitration Act and to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. Unless specifically excluded below, this Agreement applies, without limitation, to

> any claims based upon or related to discrimination, harassment, retaliation, defamation (including claims of post-employment defamation or retaliation), breach of a contract or covenant, fraud, negligence, emotional distress, breach of fiduciary duty, trade secrets, unfair competition, overtime, *wages or other compensation*, breaks and rest periods, seating, termination, tort claims, equitable claims, and all statutory and common law claims. The Agreement covers, without limitation, all claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1871, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Pregnancy Discrimination Act, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, the Fair Credit Reporting Act, *the Fair Labor Standards Act*, the Equal Pay Act, the Genetic Information Non-Discrimination Act, each as amended, *any state or local statutes, if any, addressing the same or similar subjects*, and any and all claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section entitled "Claims Not Covered by the Agreement."

(Schaffer Dep. Ex. 4 at 1.) (emphasis added.)

The Arbitration Agreement is mutual. It binds Defendants and Valesh to arbitration. (Schaffner Dep. Ex. 4 at 1.) Valesh and Defendants agreed to forego their right to pursue claims on a class or collective basis. (*Id*. at 2.) The "Class Action Waiver" states:

> The Company and I agree to bring any dispute in arbitration on an individual basis only. Accordingly: THE COMPANY AND I WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS AND/OR COLLECTIVE ACTION and the arbitrator will have no authority to hear or preside over any such claim ("Class Action Waiver"). Notwithstanding any other clause contained in this Agreement, the preceding sentence shall not be severable from this Agreement in any instance in which the claim is brought as a class and/or

>     collective action. To the extent the Class Action Waiver is determined to be invalid, unenforceable, or void, any class and/or collective action must proceed in a court of law and not in arbitration.

(*Id.*)  The Agreement further states, in bold type and all capital letters, "I AGREE THAT BY SIGNING THIS ARBITRATION AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A COURT OR JURY TRIAL AND PURSUANT TO THE TERMS OF THIS AGREEMENT, WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT." (*Id.* at 4.)

Valesh recalls completing his pre-employment documents online, but does not recall the documents he completed or the website he accessed to complete the documents. (Valesh Dep. 7:2-7:4, 7:10-7:15.)  He does not recall reviewing the Arbitration Agreement or agreeing to arbitrate his claims. (*Id.* at 24:11-24:19.)  Valesh concedes he has no reason to doubt Defendants' records which establish he began his employment on October 20, 2017, three days after the date on his Arbitration Agreement. (*Id.* at 16:7-16:13.)  Valesh continued his employment for more than a year and a half after executing his Arbitration Agreement. (*Id.* at 6:13-6:15.)

More than a year after resigning his employment, Valesh filed this action alleging Defendants failed to pay him minimum wage as required by the Fair Labor Standards Act, unlawfully deducted from his wages in violation of Indiana Code § 22-2-6-2, and failed to pay him owed wages as required by Indiana Code § 22-2-5-2. (ECF 1 at 22-25.)  Valesh purports to bring his lawsuit as a collective action under the FLSA and a class action under Indiana Trial Rule 23. (*Id.*)

**III.    ARGUMENT**

   **A.    The Federal Arbitration Act Applies and Controls.**

The Federal Arbitration Act applies to all arbitration agreements "involving commerce." 9 U.S.C. § 2.  The FAA provides, in part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for revocation of any contract.

*See id*. (emphasis added.)  The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause Power." *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

Bajco Michiana III, the entity that employed Valesh, is a limited liability company organized under the laws of Ohio with its principal place of business in Ohio. (ECF 1 at _____.) Valesh worked at a store in Lafayette, Indiana. (Valesh Dep. 9:5-9:10.)  The Arbitration Agreement to which Valesh agreed "involves commerce."  The FAA applies and governs.

   **B.    The Arbitration Agreement is a valid and enforceable contract under Indiana law.**

Under the FAA, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citations omitted).  The FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *See Dean Witter Reynolds*

*v. Byrd*, 470 U.S. 213, 218 (1985). The United States Supreme Court recently reiterated its long-held position that the FAA "establishes a liberal federal policy favoring arbitration agreements," and that courts must enforce agreements as written without delay or obstruction. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621, 1632 (2018) (internal quotations and citations omitted).

Courts apply state law principles governing contract formation to determine the validity of an arbitration agreement. *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997); *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004). Under Indiana law, an arbitration agreement must contain four elements: "offer, acceptance, consideration, and manifestation of mutual assent." *Payne v. Menard, Inc.*, 2:15-cv-317-JVB-PRC, 2017 WL 193001, *3 (N.D. Ind. Jan. 17, 2017). Each element is present here and there are no grounds upon which Valesh can argue his Arbitration Agreement should not be enforced.

Valesh agreed to arbitrate disputes arising out of his employment when he completed Defendants' onboarding process. Through that process, Defendants offered Valesh the Arbitration Agreement and Valesh accepted the Arbitration Agreement. Because the offer and acceptance occurred electronically, the agreement is considered a clickwrap agreement. Indiana law is not hostile to "clickwrap" agreements or agreements "which 'appear on a webpage and require that the user consent to any terms and conditions on a dialog box on the screen in order to proceed with the internet transaction.'" *Rojas v. GoSmith, Inc.*, No. 2:17-cv-281-JVB-JEM, 2020 WL 831585, at *3 (N.D. Ind. Feb. 2, 2020) (quoting *Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 908 N.E.2d 1168, 1173 (Ind. Ct. App. 2009) (citing *Adsit Co. v. Gustin*, 874 N.E.2d 1018, 1023 (Ind. Ct. App. 2007))).

The primary concern when evaluating the enforceability of a clickwrap agreement is "'whether the party clicking it had reasonable notice of and manifested assent to the agreement.'"

*Id*. A clickwrap agreement is not offensive "'as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement.'" *Rojas*, 2020 WL 831585, at *3 (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016) (collecting cases)).

The *Rojas* Court rejected GoSmith, Inc.'s attempt to compel Rojas to arbitration based on a clickwrap agreement. There, the arbitration agreement was available to Rojas if he clicked on the word "terms" in the sentence "I have read and agreed to the terms & privacy policy." *Rojas*, 2020 WL 831585, at *3. This language was found near a check box inviting Rojas to "See Job Matches." *Id*. The *Rojas* Court found critical that "[n]o text informed him that, by clicking the button, he was agreeing to a contract." *Id*. As a result, the *Rojas* Court ruled Rojas did not receive "reasonable notice that a click will manifest assent" and the defendant could not establish Rojas "assented to the arbitration agreement." *Id*.

The facts here are different and align more with *Rohde v. Family Dollar Stores of Indiana, LLC*, No. 1:17-cv-225-TLS, 2017 WL 5467155, at *5 (N.D. Ind. Nov. 13, 2017), where the Court compelled the parties to arbitration based on the plaintiff's execution of a clickwrap agreement. In *Rohde*, through the defendants' onboarding process, the defendant provided written notice to the plaintiff that executing the defendant's arbitration agreement was a condition of employment. *Id*. at *2-3. The defendant's onboarding process provided a link to access the arbitration agreement along with other documents. Directly above the signature box on the arbitration agreement, the following language appeared in all bold-faced caps

> **BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ITS TERMS. "I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR**

> **RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT; WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT.**

*Id*. at 2.  The plaintiff electronically signed the arbitration agreement by entering the last four digits of her social security number. *Id*.  The defendant's records, maintained in the regular course of business, reflected plaintiff completed her electronic signature and acknowledgement on August 5, 2015. *Id*.  On these facts, the court stated, "assent of the Arbitration Agreement was a condition of employment, and the Plaintiff assented when she electronically signed it." *Id*. at *4.

Like the plaintiff in *Rohde*, Valesh assented to the Arbitration Agreement. Through the onboarding process, Defendants notified Valesh agreement to the Arbitration Agreement was a mandatory condition of employment. (Schaffer Dep. Ex. 1 at 5.)  Defendants provided Valesh a link to click and review the Arbitration Agreement.  It also required Valesh to take specific action, either through a drop-down box or a blank text box to be completed by Valesh, to accept or request additional time to consider the Arbitration Agreement.  Records maintained in the ordinary course of business by EF Operating, Inc. demonstrate Valesh agreed to be bound by the Arbitration Agreement on October 17, 2017. (Kenney Decl. Ex. 1.)  And, Valesh cannot avoid enforcement of the agreement based on his testimony he does not recall whether he reviewed the Arbitration Agreement or agreed to be bound by the Arbitration Agreement.  "[A]ssertions by parties that they do not recall signing an arbitration agreement, without more, are insufficient to challenge the existence of the agreements." *Rohde*, 2017 WL 5467155, at *4; *see also DeGroff v. MascoTech Forming Techs.-Fort Wayne, Inc.*, 179 F.Supp.2d 896, 903 (N.D. Ind. 2001) (finding plaintiff's assertion she did not recall signing an arbitration agreement could not show there was no meeting of the minds).

The Arbitration Agreement also is enforceable because it is supported by adequate consideration. Paragraph 13 of the Arbitration Agreement reads:

> **13. CONSIDERATION.** The Company and I agree that the mutual obligations by the Company and me to arbitrate disputes provide adequate consideration for this Agreement. The Company and I also agree that my employment and/or continued employment, and the Company's payment of fees and costs of the arbitrator and/or that are assessed by the organization through which the arbitration is conducted also provide adequate consideration for this Agreement.

(Schaffner Dep. Ex. 4.)

"Courts have recognized that 'a mutual promise to arbitrate future disputes constitutes consideration.'" *Rohde*, 2017 WL 5467155, at *4 (quoting *Johnson v. Harvest Mgmt. Sub TRS Corp.-Holiday Ret.*, No. 3:15-CV-26-RLY-WGH, 2015 WL 5692567, at *4 (S.D. Ind. Sept. 25, 2015)); *see also Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (holding that an employer's "promise to be bound by the arbitration process itself serves as mutual consideration"); *Nuzzi v. Coachmen Indus., Inc.*, No. 3:09-CV-116, 2009 WL 3851364, at *5 (N.D. Ind. Nov. 16, 2009) (noting that consideration exists where "the employer is willing to give up its own legal right to defend itself in court, and submit its defense to arbitration").

The parties' mutual agreement to arbitrate future disputes is not the only consideration supporting the Arbitration Agreement. The Arbitration Agreement is a condition of employment with Defendants. And, Defendants employed Valesh for approximately a year and a half. Under these facts, Valesh's continued employment serves as additional consideration for the Arbitration Agreement. *See Nuzzi v. Coachmen Industries, Inc.*, No. 3:09-cv-116, 2009 WL 3851364, at *4 (N.D. Ind. Nov. 6, 2009) ("And Indiana courts recognize that '[a]n employer's promise to continue at-will employment is valid consideration' to support a binding agreement with an employee.");

*Radanovich v. Coachmen Industries, Inc.*, No. 3:09-CV-115, 2009 WL 2169417, at *4 (N.D. Ind. July 20, 2009) (finding continued employment sufficient to support agreement to arbitrate under Indiana law).

The Arbitration Agreement is a valid and enforceable contract under Indiana law. Valesh accepted Defendants' offer and the Arbitration Agreement is supported by adequate consideration.

### C.     The Arbitration Agreement covers the claims Valesh asserts.

Valesh's claims for unpaid wages must be compelled to arbitration because they fall within the express scope of the Arbitration Agreement. Under the Arbitration Agreement, Valesh and Defendants agreed to arbitrate "all claims or controversies, past, present or future, including … claims arising out of or related to my application for employment, employment, and/or the termination of my employment[.]" (Schaffner Dep. Ex. 4.)  The parties agreed to arbitrate "all claims arising under … the Fair Labor Standards Act … [and] any state or local statues, if any, addressing the same or similar subjects." (*Id*.)  Valesh agreed to arbitrate any such claims he may have against "(1) the Company, (2) Company's parents, subsidiaries, partners, divisions, and d/b/a's and affiliated entities, (3) Company's officers, directors, employees, or agents in their capacity as such or otherwise[.]" (*Id*.)

In this suit, Valesh claims Defendants failed to pay him all wages he earned during his employment.  Valesh asserts three claims against his employer, affiliated entities, and the CEO and CFO of the parent company.  Valesh alleges Defendants failed to pay him the minimum wage as required by the Fair Labor Standards Act. (ECF 1.)  He also asserts Defendants failed to pay him wages as required by Indiana Code 22-2-5-2. (*Id*.)  Third, Valesh contends Defendants unlawfully deducted amounts from his wages in violation of Indiana Code 22-2-6-2. (*Id*.)  Valesh's claims for allegedly unpaid wages unquestionably arise out of his employment. Had Bajco Michiana III not employed Plaintiff, he would have no possible claim against Bajco Michiana III

or any other Defendant for allegedly unpaid wages.  Because Plaintiff's claims fall within the scope of the Arbitration Agreement, a valid and enforceable contract, his claims are subject to arbitration.

>    D.    **Valesh has refused to proceed to arbitration.**

It is incumbent on the party seeking to compel arbitration to demonstrate the opposing party has refused to proceed to arbitration. *Rojas*, 2020 WL 831585, at *1 (citing *Zurich American Ins. Co.*, 466 F.3d at 580)).  Valesh executed the Arbitration Agreement in October 2017. (Schaffner Dep. Ex. 4; Kenney Decl. Ex. 1.)  Instead of making an arbitration demand according to the procedure outlined in the Agreement, Valesh filed this litigation. (ECF 1.)  Valesh's suing in this Court instead of in arbitration is sufficient evidence of Plaintiff's refusal to proceed to arbitration.  *See Rohde*, 2017 WL 5467155, at *5 ("The Plaintiff, by filing the Complaint, has demonstrated a refusal to arbitrate her claims.").

>    E.    **The Arbitration Agreement requires Valesh to arbitrate his claims individually.**

The Arbitration Agreement specifically requires individual arbitration and prohibits the parties from participating in a class action. (Schaffner Dep. Ex. 4.) ("THE COMPANY AND I WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS AND/OR COLLECTIVE ACTION.")  This class action waiver must be enforced as written. *See Epic Systems*, 138 S. Ct at 1632.  Under Supreme Court precedent and the express terms of the Arbitration Agreement, the Court should enforce the Arbitration Agreement, including the class action waiver, and order Valesh to individually arbitrate his claims.

>    F.    **The Court should dismiss Valesh's suit under Federal Rule of Civil Procedure 12(b)(3).**

Because the Arbitration Agreement is valid and enforceable, this Court is not the proper venue and the Court should dismiss this action without prejudice. Though the FAA only requires the Court to stay the proceedings under 9 U.S.C. § 3, "[t]here is a trend among federal courts

favoring dismissal of a case that is subject to arbitration." *Williams v. Conduent Human Services LLC*, 3:19-cv-1061-DRL-MGG, 2020 WL 3268497, at *5 (N.D. Ind. June 17, 2020) (citing *Johnson v. Orkin*, 928 F.Supp.2d 989, 1008 (N.D. Ill. 2013)); *see also Hornbuckle v. Xerox Bus. Serv., LLC*, 2015 U.S. Dist. LEXIS 18374, 11-12 (S.D. Ind. Feb. 13, 2015) (collecting cases)). The Seventh Circuit "has previously affirmed dismissals of suits when all claims are arbitrable." *See, e.g.*, *Grasty*, 599 Fed.Appx. at 597; *Baumann v. Finish Line, Inc.*, 421 Fed.Appx. 632, 636 (7th Cir. 2011).

Here, Valesh and Defendants entered into a valid and enforceable agreement to arbitrate claims and Plaintiff has refused to proceed to arbitration. This Court is not the proper venue and "dismissal is an appropriate solution in this case." *Williams*, 2020 WL 3268497, at *5.

### IV.   CONCLUSION

This Court should compel Valesh to final, binding individual arbitration, exactly as he agreed. The Court also should dismiss this litigation in favor of mandatory arbitration.

Respectfully submitted,

*/s/ Brian L. Mosby*
Brian L. Mosby (#26096-29)

*Attorneys for Defendants*

Brian L. Mosby (#26096-29)
LITTLER MENDELSON, P.C.
111 Monument Circle, Suite 702
Indianapolis, Indiana 46204
Telephone:  317.287.3600
Facsimile:   317.636.0712
Email:  bmosby@littler.com

## **CERTIFICATE OF SERVICE**

I certify that on this 19th day of May 2021, I caused a copy of the foregoing *Defendants' Memorandum of Law in Support of Renewed Motion to Compel Individual Arbitration and Dismiss Without Prejudice* to be filed electronically via the Court's CM/ECF system. A copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/ Brian L. Mosby*
Brian L. Mosby

4847-9458-0202.1 / 069115-1019