In the United States District Court
for the Northern District of Indiana
Lafayette Division

| | |
|---|---|
| Joseph Valesh,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Bajco International, LLC, *et al.*,<br><br>Defendants. | Case No. 4:20-cv-00028<br><br>Judge Damon R. Leichty |

Memorandum in Opposition to Defendants' Renewed
Motion to Compel Individual Arbitration and Dismiss

**1.    Introduction**

Defendants claim that Plaintiff Joseph Valesh signed an arbitration agreement that requires him to adjudicate his claims through individual arbitration. Defendants can only compel arbitration if they can show a valid contract between the parties. Here, none exists. Defendants' unclear onboarding process means that no such agreement can exist as a matter of law. Defendants' purported arbitration agreement fails due to a lack of a meeting of the minds and a lack of mutual assent. Because the factual record indicates no valid contract exists between the parties, Plaintiff asks the Court to deny Defendants' Motion. At the very least, material issues of fact remain for determination by a jury pursuant to 9 U.S.C. § 4. Defendants' Motion must be denied.

1

**2.	Background**

Plaintiff filed this FLSA lawsuit on May 1, 2020. Doc. 1. Defendants responded by claiming that Plaintiff signed a valid arbitration agreement and that the Court should compel arbitration. Docs. 12, 13. Plaintiff then requested to hold Defendants' Motion in abeyance while the parties conducted discovery on the validity and enforceability of the alleged arbitration agreement. Docs. 14, 15. The Court granted Plaintiff's request, and the parties have completed that discovery. Docs. 21, 24, 27. Defendants now renew their Motion. Doc. 42. And Plaintiff responds in opposition.

**3.	Legal Standards on Arbitrability of a Dispute**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, a party seeking to compel arbitration must show: "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 106 S.Ct. 1415, 1418 (1986) (citations omitted). "The determination of whether parties are contractually bound to arbitrate and what issues they are bound to arbitrate are matters to be determined by the court." *Shimkus v. O'Charley's, Inc.*, 2011 U.S. Dist. LEXIS 91529 at *2, No. 1:11-CV122-TLS (N.D. Ind. August 16, 2011) (citing *Granite Rock Co. v. Int'l Broth. of Teamsters*, 130 S.Ct. 2847, 2855 (2010)) (additional citations omitted).

"Indiana courts apply ordinary contract principles to arbitration agreements." *Id.* at *4 (citing *Showboat Marina Casino P'ship v. Tonn & Blank Const.*, 790 N.E.2d 595, 598 (Ind. Ct. App.

2003); *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001)). "The intention of the parties to a contract is a factual matter to be determined from all the circumstances." *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994) (citing *Sho-Pro of Indiana, Inc. v. Brown*, 585 N.E.2d 1357, 1360 (Ind. Ct. App. 1992)); *accord Rojas v. Gosmith, Inc.*, No. 2:17-CV-281-JVB-JEM, 2020 U.S. Dist. LEXIS 28922, at *6 (N.D. Ind. Feb. 20, 2020). While the interpretation of a construction of a legal contract is a question of law to be determined by the Court, the facts which serve as a basis for that interpretation, and for the determination of the existence of a contract, must be determined by the trier of fact. *Kokomo Veterans, Inc. v. Schick*, 439 N.E.2d 639, 643 (Ind. Ct. App. 1982). "The party urging the validity of a contract bears the onus of proving its existence." *Ochoa*, 641 N.E.2d at 1044; *accord Perrill v. Perrill*, 126 N.E.3d 834, 840 (Ind. Ct. App. 2019).

The Federal Arbitration Act does not expressly identify the evidentiary standard that the party seeking to avoid compelled arbitration must meet. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). However, courts analogized the standard to that required of a party opposing summary judgment under Rule 56(e): the opposing party must demonstrate the existence of a genuine issue of material fact warranting a trial. *Id.* Further, the party opposing arbitration may demand that the issue of whether a valid contract exists be decided by a jury. 9 U.S.C. §4, as Plaintiff does here.

**4.      Argument**

    **4.1.     Defendants cannot compel arbitration because no binding agreement exists between the parties.**

Under Indiana law, "[a] valid contract requires offer, acceptance, and a meeting of the minds." *DeGroff v. MascoTech Forming Technologies-Fort Wayne, Inc.*, 179 F.Supp.2d 896, 903

3

(N.D. Ind. 2001) (citing *Flynn v. AerChem, Inc.*, 102 F.Supp.2d 1055, 1059 (S.D. Ind. 2000)). "A 'meeting of the minds' occurs when the parties have the same intent." *Id.* (citing *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 883 (Ind. Ct. App. 2000)). A meeting of the minds "is essential to the formation of a contract." *Wallem*, 725 N.E. 2d at 883 (citing *Ochoa*, 641 N.E.2d at 1044). "Indiana law places on the party seeking to enforce the contract the burden of showing 'that the contractual provisions were explained to the other party and came to his knowledge and there was in fact a real and voluntary meeting of the minds.'" *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F.Supp.2d 985, 997 (S.D. Ind. 2001) (quoting *Weaver v. American Oil Co.*, 276 N.E.2d 144, 146 (Ind. 1971)). "If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed." *Barrand v. Martin*, 120 N.E.3d 565, 572 (Ind. Ct. App. 2019) (citing *Kelly v. Levandoski*, 825 N.E.2d 850, 857 (Ind. Ct. App. 2005)).

There was no meeting of the minds between Plaintiff and Defendants as to the terms of the arbitration agreement, and under the circumstances here, it was impossible. Defendants claim that Plaintiff completed their online employee onboarding process on October 18, 2017. Plaintiff has no specific recollection of the general onboarding process, but denies that he ever saw an arbitration agreement, much less agreed to be bound by one. In fact, Plaintiff was unaware of any arbitration agreement until it was brought to his attention during this litigation. A review of Defendants' onboarding process, specifically the page on which the arbitration agreement was allegedly presented, demonstrates how a person completing the process could understandably miss the agreement entirely. Exhibit 1, relevant screenshots attached as Ex. 2 to the deposition transcript of Dave Kenney ("Kenney Dep.") pp. 26:21–27:11; 38:2–5.

Defendants claim Plaintiff completed an online onboarding process with 11 different subsections: (1) Welcome!; (2) Personal Info, (3) Contact Information; (4) Emergency Contacts; (5) Education; (6) Policies; (7) EEO; (8) Additional Questions; (9) I-9; (10) Withholding; and (11) Thank You. *Id.* This onboarding process was exactly the same for the employees at every Papa John's store across Defendants' entire Papa John's enterprise, which includes over 100 stores. The user can access the arbitration agreement through a link under the "Additional Questions" subsection.



Exhibit 1.

Users were not required to click the link to the agreement in order to advance beyond this page, and neither Defendants nor the third-party administrator of the onboarding process are able to determine whether an employee has clicked the link and actually accessed the agreement. Kenney Dep., p. 35:19–36:6. Mr. Kenney further testified that the website was in substantially the same condition in which Defendant's website existed on October 18, 2017. However, in the

version made available to Plaintiff in discovery, the user was required to select "I Agree" from a dropdown box. *Id.* According to Mr. Kenney, Plaintiff was instead required to type "I Agree" into a blank text box on this page. Kenney Dep., p. 29:22–30:15. When asked whether a link could be provided to the onboarding process as it was at the time Plaintiff allegedly completed it, Mr. Kenney stated that it could not. *Id.* at p. 37:7–38:1.

The Seventh Circuit Court of Appeals noted that making the determination whether a party who clicks on a box on a website has thereby entered into a binding written contract, is a fact-intensive inquiry that requires the web page to adequately communicate the agreement's terms, unlike a physical contract:

> Translated to the Internet, we might ask whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms. This is a fact-intensive inquiry: we cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.) Indeed, a person using the Internet may not realize that he is agreeing to a contract at all, whereas a reasonable person signing a physical contract will rarely be unaware of that fact.

*Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034–35 (7th Cir. 2016).

The layout of the relevant page on Defendant's website raises further concerns. "No court has suggested that the presence of a scrollable window containing buried terms and conditions of purchase or use is, in itself, sufficient for the creation of a binding contract." *Id.* at 1036. That is precisely the situation present in this case. The only reference to "arbitration" on this page is in a block of text in smaller, lighter font than other text on the page and the method by which the user proceeds from this page is by clicking a button entitled "Continue Questions." The "Continue Questions" box is significantly larger than the preceding text. A user could easily complete the

form, scroll down, and click on the large "Continue Questions" box, without ever realizing the link to the agreement and statement below it. Plaintiff maintains that he does not recall completing this onboarding process, and stated unequivocally that he has not seen or reviewed any alleged arbitration agreement and thus has not typed "I Agree" or selected "I Agree" in the manner required by the onboarding process. Exhibit 2, excerpts from the deposition transcript of Plaintiff Joseph Valesh, ("Valesh Dep."), pp. 17:2–18:17, 21:1–18, 27:1–17.

As the Seventh Circuit discussed in *Sgouros*, just because Plaintiff clicked the large, "Continue Questions" box on Defendant's website below a smaller link to the arbitration agreement itself, it does not follow that Plaintiff therefore had notice of all contents of the terms of the agreement. "Clarity and conspicuousness of arbitration terms are important in securing informed assent." *Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770, 790 (N.D. Ill. 2011), quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2nd Cir. 2002). It is a basic tenent of contract law that a contract requires a manifestation of mutual assent. *Id.* at 789 (citations omitted). Indiana law requires mutual assent in order to form a valid contract. *Payne v. Menard, Inc.*, 2017 WL 193001 at *3, No. 2:15-CV-317-JVB-PRC (N.D. Ind. January 17, 2017) (citations omitted). Defendants claim that their onboarding website's format creates a "clickwrap" agreement, and that because it requires an affirmative action on the part of the user to manifest assent, the arbitration provision should be upheld as valid. *See* Doc. 43, at pp. 8–9. Because the terms at issue are can only be found by clicking an inconspicuous link, the user does nothing to manifest assent to a hidden agreement to arbitrate. The only thing Plaintiff agreed to when he clicked the large, green box on Defendants' website was to "Continue Questions." In so doing,

7

Plaintiff clearly did not manifest his assent to arbitrate any disputes that might arise between himself and Defendants.

    **4.2.** **Because Plaintiff has identified disputed issues of fact regarding the existence of an arbitration agreement, Defendants' Motion should be denied and this issue should proceed to a jury.**

"The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder*, 305 F.3d at 735 (citing *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir. 1987)). "[C]ourts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Id.* (citations omitted) "In deciding whether the party opposing summary judgment (and by analogy compelled arbitration) has identified a genuine issue of material fact for trial, 'the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.'" *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2513 (1986)). "The question therefore, is…'whether [plaintiff has] produced sufficient evidence to raise a factual issue concerning whether she and [defendant] are bound by a contract to arbitrate.'" *Versmesse v. AT & T Mobility LLC*, 2014 U.S. Dist. LEXIS 27816 at *4, No. 3:13 CV 171 (N.D. Ind. March 4, 2014) (quoting *Tinder*, 305 F.3d at 735).

    Defendants attempt to liken this case to *Rohde v. Family Dollar Stores of Indiana, LLC*, No. 1:17-cv-225-TLS, 2017 U.S. Dist. LEXIS 187806 (N.D. Ind. Nov. 13, 2017), where a plaintiff was compelled to arbitration based on a clickwrap arbitration agreement. Doc. 43, pp. 9–10. But that outcome was based on the plaintiff's mere assertion that she "d[id] not recall signing an arbitration

agreement." *Rohde*, 2017 U.S. Dist. LEXIS 187806 at *4. A plaintiff's simple lack of recollection is insufficient to call into question the existence of an arbitration agreement because the defendant's regularly maintained business records indicated she had signed. *Id.*

The present case is easily distinguishable. Here, Plaintiff acknowledges that he does not recall certain aspects of the onboarding process, but he has testified that he is certain he has never seen the arbitration agreement in question nor has he ever signed such an agreement. Exhibit 3, Valesh Dep., pp. 17:2–18:17, 21:1–18, 27:1–17. Plaintiff goes a step further and acknowledges that in a rush to get Plaintiff on the road delivering pizzas, his manager, Brent, likely completed a portion of Plaintiff's onboarding process. *Id.* at 21:1–18.

The difference between a lack of recollection and Plaintiff's outright denial is crucial. Seventh Circuit precedent presents a "straightforward rule" regarding this distinction: "when the plaintiff submits an affidavit stating that he does not recall receiving a letter, there is no triable factual dispute, but when the plaintiff submits an affidavit in which he denies receiving a letter, a triable dispute exists." *Gupta v. Morgan Stanley Smith Barney, LLC*, No. 17 C 8375, 2018 U.S. Dist. LEXIS 77989, at *2 (N.D. Ill. May 9, 2018) *Warren v. Meijer*, No. 16 C 4706, 2017 U.S. Dist. LEXIS 112817, at *3 (N.D. Ill. July 20, 2017) (denying motion to compel arbitration where plaintiff submitted affidavit "specifically den[ying] that he clicked to accept the [arbitration] agreement" even where defendant submitted testimony that plaintiff was seen accepting the agreement and records reflecting that plaintiff reviewed and accepted agreement). In this case, Plaintiff's deposition testimony creates a genuine issue as to whether the parties actually entered into the alleged arbitration agreement. As such, at *minimum*, trial on this issue is appropriate.

In light of the evidence raised by Plaintiff herein, there exists, at the very least, "a triable issue of fact concerning the existence of the [arbitration] agreement." *Tinder*, 305 F.3d at 735. After limited discovery, Defendants have presented a renewed motion to compel arbitration, allowing the Court to adjudicate the motion under a summary judgment standard. Because "the party opposing arbitration [Plaintiff] can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration [agreement]," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3rd Cir. 2013) (citing *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011) (quoting 9 U.S.C. § 4)). While Plaintiff believes he has presented enough evidence and authority herein for this Court to deny Defendants' Motion with prejudice—but, should the Court believe that a question of fact exists, Plaintiff requests that the Court deny Defendants' motion and set this matter for a trial regarding "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same." 9 U.S.C. § 4.

### 4.3. If the Court finds Defendants' Motion well-taken, this matter should be stayed and not dismissed.

Defendants' request that the Court dismiss this case is contrary to the wording of the statute Defendants seek to enforce. The FAA states that if "the court in which such suit is pending [is] satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…" 9 U.S.C. § 3. This allows the Court to retain jurisdiction over the case to later vacate, modify, or correct the award of

10

the arbitrator(s) if the circumstances dictate such action is appropriate. *See* 9 U.S.C. §§ 10–11. While Plaintiff contends he should be allowed to continue to litigate this matter before the Court, should the Court believe Plaintiff's claims must be arbitrated, Plaintiff requests the Court stay this action pending the outcome of the arbitration, rather than dismiss this matter. Additionally, there are three plaintiffs who have opted into this matter to pursue claims against Defendants. Defendants have not produced signed arbitration agreements for these delivery drivers, and the parties have not engaged in discovery regarding the arbitrability of their claims. As such, the Court should not dispose of Defendants' Motion in a manner that would prejudice the opt-in plaintiffs' ability to pursue their claims against Defendants.

**5. Conclusion**

Defendants possess no record of the website as it existed during Plaintiff's onboarding. Defendants possess no evidence that Plaintiff ever viewed the arbitration agreement. The existing evidence shows an agreement buried in small, pale text embedded behind a link. Moreover, Plaintiff denies he even saw parts of the onboarding process he allegedly completed. Plaintiff hereby moves for an order denying Defendants' Motion to Compel Arbitration. In the alternative, Plaintiff hereby demands a jury trial, pursuant to 9 U.S.C. § 4, to determine the validity of the alleged arbitration agreement.

    Respectfully submitted,

*/s/ Nathan Spencer*
Andrew R. Biller
Andrew P. Kimble
Nathan B. Spencer
Riley Edward Kane
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236

Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*nspencer@billerkimble.com*
*rkane@billerkimble.com*

Patrick I. Jones (32646-49)
Email: pjones@witheredlaw.com
WITHERED BURNS & WILLIAMS, LLP
8 North Third Street, Suite 401
P.O. Box 499
Lafayette, IN 47902-0499
Telephone: (765) 742-1988
Fax No.: (765) 742-8774
*Counsel for Plaintiff*

## Certificate of Service

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

>    */s/ Nathan B. Spencer*
>    Nathan B. Spencer