UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JOSEPH VALESH, <br><br> Plaintiff, <br><br> v. <br><br> BAJCO INTERNATIONAL, LLC *et al.*, <br><br> Defendants. | CAUSE NO. 4:20-CV-28 DRL-JPK |

OPINION & ORDER

Joseph Valesh claims a host of defendants (collectively "Bajco Group") violated the Fair Labor Standards Act and Indiana wage laws by failing to pay him minimum wage as a pizza delivery driver at Papa John's. His complaint seeks conditional certification under 29 U.S.C. § 216(b) for similarly situated pizza delivery drivers and ultimately certification of a class action. Bajco Group requests arbitration before reaching these issues. The court grants the motion to compel arbitration.

BACKGROUND

Mr. Valesh was employed as a pizza delivery driver at Papa John's in Lafayette, Indiana from October 2017 to approximately April 2019. He applied for this position online by creating a user account and providing information through an online portal. He also used the online portal to complete his onboarding process. Although he doesn't recall being asked to agree to a binding individual arbitration agreement [ECF 43-1 at 24], the onboarding process included an "Additional Questions" page with the following text:

> **IMPORTANT**: The following agreement is a condition of your employment. Please click on the link and review the agreement carefully. After reading the agreement in [its] ENTIRETY please answer the question below.
>
> **Click Here** to view the agreement.

A line then transected the screen, and below the line read in a smaller and lighter colored font, though still easily visible:

> This arbitration agreement is a condition of your employment. If you understand and agree to abide by the arbitration agreement terms, please select, "I Agree." If you need more time to review the arbitration agreement terms, please select, "I Need More Time."

At the bottom of the screen was a text box where the applicant could select "I Agree" or "I Need More Time." At the time Mr. Valesh onboarded, the text box required him to type his agreement into it or request for more time, which was then populated into the arbitration agreement accessible through the "Click Here" link [ECF 43-2 at 43].

The terms of the arbitration agreement read, in relevant part:

> **All disputes covered by this Agreement between me and the Company will be decided by an arbitrator through arbitration and not by way of court or jury trial.**
>
> . . .
>
> . . . this Agreement applies, without limitation, to any claims based upon or related to . . . wages or other compensation . . . and all statutory and common law claims. The Agreement covers, without limitation, all claims arising under . . . the Fair Labor Standards Act . . . any state or local statutes, if any, addressing the same or similar subjects, and any and all claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance.

The agreement also contained a provision requiring all disputes to be resolved individually, and not on a class or collective basis. At the bottom of the arbitration agreement, Mr. Valesh's name and a timestamp appear in the "Employee Signature" box and "I Agree," which Mr. Valesh entered on the "Additional Questions" page, appear in the "Employee Name Printed" box.

## STANDARD

The Federal Arbitration Act (FAA) treats written arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 629-30 (2009) (quoting 9 U.S.C. § 2). The question of

2

arbitrability—whether the parties must submit a particular dispute to arbitration—is "an issue for judicial determination . . . [u]nless the parties clearly and unmistakably provide otherwise[.]" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Under the FAA, three things are needed to compel arbitration: (1) a written arbitration agreement, (2) a dispute within the agreement's scope, and (3) a refusal to arbitrate that dispute. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

"The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). This circuit has "analogized the standard to that required of a party opposing summary judgment under" Federal Rule of Civil Procedure 56(e). *Id.* The opposing party must demonstrate that a genuine issue of material fact warranting a trial exists. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* (citing *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)). In short, the party opposing arbitration must identify a triable issue concerning the agreement's existence or scope to preserve a trial. *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir. 1987), *abrogation on other grounds recognized in Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 425 n. 12 (7th Cir. 2015).

## DISCUSSION

Bajco Group says a valid arbitration agreement exists, Mr. Valesh refuses to proceed to arbitration, and the scope of the arbitration agreement covers the claims here. In response, Mr. Valesh concedes the agreement's scope and confirms his opposition to arbitration, leaving nothing for the court to address on these two points. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). The briefs whittle the dispute down to whether a valid arbitration agreement exists—specifically

3

whether Bajco Group's internet-based or clickwrap arbitration agreement provided an adequate mechanism to create a contract and to confirm mutual assent to arbitration.

The FAA was enacted to "reverse the longstanding judicial hostility to arbitration agreements" that carried over into American courts from English common law. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA created a strong policy favoring arbitration, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), though it remains the subject of contract, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply state law principles that govern the formation of contracts. *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

The FAA allows arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 512, 514 (7th Cir. 2003) (remanding case to assess whether there was a meeting of the minds). The court must first decide whether a valid contract to arbitrate exists before it decides whether to stay an action and order arbitration based on the contract's scope. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010).

The court looks to Indiana contract law to determine whether a valid contract exists. *See Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997) (state law of the "situs of all relevant events" governs). Indiana law declares that "[w]hether the parties agreed to arbitrate any disputes is a matter of contract interpretation, and most importantly, a matter of the parties' intent." *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 782 (7th Cir. 2014) (quoting *MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004)) (alteration in original). Under Indiana law, a valid contract requires offer, acceptance, consideration, and mutual assent. *Ellison v. Town of Yorktown*, 47 N.E.3d 610, 617 (Ind. Ct. App. 2015).

4

Bajco Group argues that the online text box located on the "Additional Questions" page constitutes a legal clickwrap agreement—an online contract that parties agree to by ticking a box and clicking a button. Mr. Valesh argues that he never agreed to the arbitration provision (and thus there was no meeting of the minds) because he either didn't have notice of the agreement or it was signed by his manager while he was delivering pizzas.

An employee's signature reflects that he accepted the agreement, *see Flynn v. AerChem, Inc.*, 102 F. Supp.2d 1055, 1060 (S.D. Ind. 2000) ("[i]f [the plaintiff] signed the Agreement, even without full knowledge of its terms, [his] signature acts an acceptance of the Agreement's terms"), and parties are generally bound to an arbitration agreement even if they did not read it, *see DeGroff v. MascoTech Forming Technologies-Fort Wayne, Inc.*, 179 F. Supp.2d 896, 903 (N.D. Ind. 2001). That said, a court "cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.)[.] Indeed, a person using the Internet may not realize that [he] is agreeing to a contract at all, whereas a reasonable person signing a physical contract will rarely be unaware of that fact." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016) (applying Illinois law). Thus, when "deciding whether a clickwrap agreement is enforceable," the court must assess if "the party clicking it had reasonable notice of and manifested assent to the agreement." *Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 908 N.E.2d 1168, 1173 (Ind. Ct. App. 2009). This doesn't "focus on each party's subjective intent, but focuses on each party's outward manifestation of intent." *Ellison*, 47 N.E.3d at 619. "The intention of the parties to a contract is a factual matter to be determined from all the circumstances." *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005).

Indiana courts have found notice and mutual assent to exist when an agreement's text is immediately visible to the user, the user must take an affirmative action to accept the text (such as clicking on an "I Accept" button), and the user cannot move to the next page without accepting the

agreement. *Adsit Co. v. Gustin*, 874 N.E.2d 1018, 1023 (Ind. Ct. App. 2007). Federal courts in this district applying Indiana law concur that during the onboarding process, when an employee must create a password and username, is prompted to click on a link identifying an arbitration agreement, is notified that the agreement is a condition of employment, and takes affirmative action indicating assent to the arbitration agreement, the contract is valid. *See Rohde v. Family Dollar Stores of Ind., LLC*, 2017 U.S. Dist. LEXIS 187806, 3-6, 10 (N.D. Ind. Nov. 13, 2017) (when individual was prompted to click a link, enter the last four digits of her social security number, and received a copy over her email, a valid agreement existed); *but see Rojas v. Gosmith, Inc.*, 2020 U.S. Dist. LEXIS 28922, 5-7 (N.D. Ind. Feb. 20, 2020) (when the agreement box is prechecked, and thus the party does not have to affirmatively act before moving to the next page, no mutual assent).

The arbitration agreement assent page wasn't perfect. The page was entitled "Additional Questions" and didn't reference an arbitration agreement conspicuously in the title. The introductory warning about the agreement's importance likewise omitted reference to an arbitration term, though it clearly told the applicant to read the entire agreement because it would govern his employment. Under the line, though, there was more information. Text there referred him explicitly to an arbitration agreement with a warning that an arbitration agreement was a condition of his employment and then provided him two options—to read the agreement more or to consent to the arbitration agreement. That said, nothing required Mr. Valesh to click the link to read the agreement. He had to elect to do so, but there was no doubting what was there.

Mr. Valesh also had to create a unique account to proceed through the onboarding process. Immediately before the assent text box, a provision clearly stated, "[t]his arbitration agreement is a condition of your employment." There was no other agreement on the page, so the provision could only refer to the warning about arbitration and the link to the arbitration agreement. The provision

also stated that if the individual "understand[s] and agree[s] to abide by the arbitration agreement," he had to indicate as much in the text box. The text box was not prepopulated.

At the time Mr. Valesh onboarded, he was required to type his assent before proceeding. The clickwrap agreement required some affirmative action to denote his consent. And when prompted immediately under the text describing his agreement to the contract, he clearly and affirmatively typed "I Agree," which was populated into the arbitration agreement, along with his name, a date, and a timestamp indicating that he agreed to the terms on October 17, 2017—three days before his employment began on October 20, 2017. Because the link to the arbitration agreement was specifically identified on the page, because its importance was emphasized above the text box, and because the page required some form of affirmative action to indicate consent, a reasonable person would have—and Mr. Valesh did have—notice of the existence of an arbitration agreement so as to assent. *See Jallali*, 908 N.E.2d at 1173. Though the arbitration agreement could have been presented in other ways, its presentation was sufficient to "get the message through" to Mr. Valesh that he was being asked to agree to an arbitration contract, *Sgouros*, 817 F.3d at 1036, and typing "I Agree" when prompted objectively manifested assent, *Rojas,* 2020 U.S. Dist. LEXIS 28922 at 5-7 (distinguishing clicking a button from not interacting).

Mr. Valesh's assertion that he didn't remember seeing the agreement, reading the agreement, or signing it does not overcome the notice's reasonableness and the objective nature of his manifestation of assent. *See Rohde*, 2017 U.S. Dist. LEXIS 187806 at 12 ("assertions by parties that they do not recall signing an arbitration agreement, without more, are insufficient to challenge the existence of the agreements") (internal quotations omitted). Mr. Valesh points to deposition testimony and says he is certain he had never seen the arbitration agreement or signed it, thereby trying to distinguish his testimony from "recall" testimony insufficient to create a triable issue. *See id.* However, a review of that testimony reveals that Mr. Valesh was asked if he recalled ever seeing the document

or signing it, to which he consistently answered "no" [ECF 44-2 at 17, 27]. His inability to recall isn't enough. This testimony also doesn't undercut the presumption that a signed agreement indicates that he read the agreement. "Under Indiana law, a person is presumed to understand the documents [that] he signs and cannot be released from the terms of a contract due to his failure to read it." *Earley v. Edward Jones & Co., LP*, 105 N.E.3d 1094, 1100 (Ind. Ct. App. 2018) (quoting *Clanton v. United Skates of Am.*, 686 N.E.2d 896, 899-900 (Ind. Ct. App. 1997)); *accord Lakin v. Auto-Owners Ins. Co.*, 2021 Ind. App. Unpub. LEXIS 327, 12 (Ind. Ct. App. Apr. 20, 2021) ("failure to read the policy is not an excuse").

Mr. Valesh next asserts that this agreement was completed by his manager when he began delivering pizzas. His only evidence is his testimony that in an effort to get him out delivering pizzas, Mr. Valesh's manager completed some components of the onboarding process. Even Mr. Valesh believed these components were limited to watching training videos, however [ECF 44-2 at 21]. He started work October 20, 2017 and began delivering pizzas that day, so his manager's involvement that day wouldn't explain why the agreement says it was signed on October 17, 2017. Mr. Valesh also testified that he didn't share his password and login information with anyone, including his manager, so as even to permit the manager's involvement [*Id.* at 18]. The manager theory isn't a justifiable inference from this record, nor creates a triable issue for the jury. *See Tinder*, 305 F.3d at 735.

Because the onboarding platform provided reasonable notice of the arbitration agreement's existence and because Mr. Valesh affirmatively assented to arbitration as a condition of his employment—and for matters alleged in this lawsuit—his claims cannot proceed here. The FAA provides that, once a court concludes that a matter must go to arbitration, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, provid[ed] the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. That said, there is a trend among federal courts favoring dismissal of a

8

case that is subject to arbitration. *See Johnson v. Orkin*, 928 F. Supp.2d 989, 1008 (N.D. Ill. 2013); *see also Hornbuckle v. Xerox Bus. Serv., LLC*, 2015 U.S. Dist. LEXIS 18374, 11-12 (S.D. Ind. Feb. 13, 2015) (collecting cases). The court of appeals has also affirmed dismissals of suits when all claims are arbitrable, such as they are here. *See, e.g.*, *Baumann v. Finish Line, Inc.*, 421 F. Appx. 632, 636 (7th Cir. 2011). The FAA's stay provision doesn't divest the court of its authority by rule to dismiss. *See McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 678-79 (7th Cir. 2001). This court isn't the proper venue, and dismissal without prejudice under Rule 12 is the proper remedy. *See* Fed. R. Civ. P. 12(b)(3); *Baumann*, 421 F. Appx. at 636; *McCaskill*, 298 F.3d at 678-79; *Johnson*, 928 F. Supp.2d at 1008.

Mr. Valesh argues that the court should stay this matter in light of the other plaintiffs who consented to join the collective action and for whom Bajco Group has not presented arbitration agreements [*see* ECF 20; ECF 36; ECF 46]. *See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020) ("a court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements . . . the court must give the defendant an opportunity to make that showing"). The conditional certification of the collective action was vacated [ECF 35], so the only plaintiff before the court is Mr. Valesh. To the extent that his point is that these other putative plaintiffs may not have arbitration agreements, they can sue in their own right; but he is not similarly situated to them to permit FLSA certification to be perfected through him.

The court will compel arbitration. The FAA requires the "hearing and proceedings," pursuant to an agreement compelled to arbitration, "shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. That is the case unless an agreement contains a forum selection clause. *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009). Then "only the district court in that forum can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995)). Here, the

9

agreement required arbitration "in or near the city" in which Mr. Valesh was employed, so the court's order to compel appropriately secures arbitration in this district.

Although the period to submit a written request for arbitration must occur before the tolling of the statute of limitations for the claim, the time accruing during this federal proceeding is excluded. *See Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 430 (1965) ("Both federal and state jurisdictions have recognized the unfairness of barring a plaintiff's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run.").

## CONCLUSION

Accordingly, the court GRANTS Bajco Group's motion to compel arbitration (ECF 43), DISMISSES this case WITHOUT PREJUDICE under Rule 12(b)(3), ORDERS the parties to proceed to arbitration, DENIES Mr. Valesh's request to stay arbitration (ECF 44), and DIRECTS the clerk to enter judgment accordingly. This order terminates the case.

SO ORDERED.

October 19, 2021                             *s/ Damon R. Leichty*
                                             Judge, United States District Court